**Application of Walter JEANMAIRE.**
**Patent Appeal No. 8925.**

United States Court of Customs
and Patent Appeals.

May 17, 1973.

G. Cabell Busick, Mason, Fenwick & Lawrence, Washington, D. C., attorney of record, for appellant.

Claude A. Fishburn, Orville O. Gold, Fishburn, Gold & Litman, Kansas City, Mo., attorneys of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

Burgess, Dinklage & Sprung, New York City, attorneys of record, for appellant. James F. Woods, New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 2–3 and 5, all the claims remaining in appellant's application,[1] for obviousness under 35 U.S.C. § 103.

### The Invention

Appellant's invention relates to the addition of a series of "pre-opening conveyor belts" to a known cotton bale opening machine. The resulting apparatus is shown schematically in the application drawing as follows:

The bale opening machine includes a series of reciprocating conveyor belts F1–F5 with bale opening devices A1–A4 located therebetween. The bales B1–B5 are reciprocated back and forth over the opening devices and the opened cotton fibers drop onto conveyor belt T. To maintain the bales close together during their back and forth movement, conveyors F1–F5 are sequentially operated as recited in claim 2 "in such manner that the rearmost belt in the direction of each reciprocating movement is first to be moved."

A series of pre-conveyor belts G2–G6 supply bales B7–B11 that are in increasing degrees of "blooming"[2] from left to right. A final pre-conveyor G1 automatically supplies bale B6 to the upstream conveyor belt F5 when a photocell Z indicates the completion of the opening of bale B1.

In his brief before the board, appellant gave the background and purpose of his invention as:

In the prior art it is known to permit blooming or blossoming of bales simply by untying such and permitting the untied bales to come to ambient conditions in the bale opening area.

It should be appreciated that if a bale is untied and then permitted to bloom, after a given amount of time during which the blooming is more or less completed, the bale becomes increasingly difficult to transport because the compressive forces holding

---

1. Serial No. 684,833, filed November 21, 1967.

2. Cotton bales "bloom" or "blossom" by acclimatization to room conditions for a certain period of time after their steel hoops and jute coverings are removed.

the bale tufts together relax as a function of time, and therefore it is difficult, if not impossible, to neatly pick up a bloomed bale and move it from its blossoming location onto the first of a series of picking means stations.

According to the instant invention, this specific difficulty is absolutely avoided by providing the series of pre-opening conveyor belts referred to above, which are preferably linearly aligned with the picking means. By permitting a bale to blossom on these pre-opening conveyor belts, no significant material transfer difficulty is encountered because it is not necessary to physically lift the bale during blossoming or after blossoming with conventional material transfer means such as a form [fork?] lift truck.

Claim 5, the sole independent claim, reads:

In a bale opening apparatus comprising a plurality of aligned conveyor belts, a plurality of bale opening means disposed between adjacent conveyor belts, means for reciprocating said conveyor belts whereby bales resting thereon are reciprocated in operative relation to said opening means in such manner as to open said bales therewith; control means associated with the downstream-most conveyor belt and bale thereon which, upon sensing completion of the opening of said downstream-most bale, causes the remaining bales to move downstream one conveyor belt length and causes a new, previously untied bale to be positioned on the upstream-most conveyor belt; the improvement which comprises a multiplicity of streamwise aligned pre-opening conveyor belts upstream of, streamwise aligned with the proximate to the upstream-most conveyor belt having bale-opening means associated therewith, wherein each of said pre-opening conveyor belts supports a bale and wherein said control means is operatively connected to all of said pre-opening and bale opening means-associated-conveyor belts and causes a bale on the downstream-most of said pre-opening conveyor belts to be transferred to the upstream-most of said opening means-associated conveyor belts, causes the downstream movement of bales onto the next successive downstream-most conveyor belt and causes a fresh bale to be placed upon the upstream-most pre-opening conveyor belt in an untied condition.

Claims 2 and 3 both depend from claim 5. As noted above, claim 2 requires that the reciprocating conveyor belts be sequentially operated "in such manner that the rearmost belt in the direction of each reciprocating movement is first to be moved." Claim 3 recites that the "control means is a photoelectric element."

### The References

Platt et al.[3] (Platt) relates to a bale opening device shown as follows in Figure 2:

*Fig. 2.*

3. U. S. Patent No. 3,381,341, issued May 7, 1968 on an application filed October 1, 1964.

Platt's device differs from appellant's mainly in that a *single* "loading conveyor 31" delivers a bale to the first of a series of reciprocating conveyor belts of the bale-opening device. The loading conveyor is automatically advanced to supply an unopened bale when a photocell 47 detects that the downstream-most bale on the reciprocating conveyor belt 38 has been fully opened, that is, all of its fibers have been removed. When an untied bale is initially placed on the conveyor 31, a "normally open momentary manual switch 98 * * * provided in parallel with [the] photocell contacts" permits the "loading conveyor" to be moved to properly position the new bale thereon in order "to ready the new bale for the next automated advance of all of the bales * * *."

A photograph in *The Saco-Lowell Bulletin,* bearing a date of June 1951, shows a worker manually feeding portions of three bales of cottom to a device for processing. An additional three bales are shown next to the device and are apparently being allowed to "bloom."

### The Rejection

The examiner held that it would have been obvious to modify Platt by providing additional loading conveyors in view of the prior knowledge in the art that cotton bales are conventionally untied and allowed to "bloom" prior to opening such as evidenced by *The Saco-Lowell Bulletin.* Regarding the additional limitation in claim 2, the examiner stated:

Appellant argues in regard to the rejection of claim 2, "while it is possible that the conveyor belts of the reference associated with the picking means thereof could be adapted to sequentially initiate or reciprocate as required by the instant claim 2, it is just as clear that it would take knowledge outside the four corners of the reference and beyond the skill of a routineer in the art to introduce this sequential initation [sic] or reciprocation". This is not conceded. To a person skilled in the art, the sequential operation of the conveyor belts so

that the rearward-most belt is first to be moved could be readily accomplished. One skilled in the electrical arts is certainly considered to be capable of installing a drive to said conveyor belts that would sequentially initiate reciprocation thereof as well as a person skilled in the mechanical arts. Furthermore, whether or not the conveyor belts are sequentially operated, the primary purpose of said conveyor belts is to pass a bale of cotton over the plucking means for the removal of tufts of cotton from the bottom of the bale. Therefore, whether the belts are sequentially operated does not change the fact that the primary function of the apparatus of Platt et al. and the claimed apparatus is to remove tufts of cotton from the bottom [of] a bale of cotton for further processing.

The board noted that the single loading conveyor of Platt allows a bale to partially bloom thereon. It stated:

It is axiomatic in any system of continuous processing that required time intervals are maintained by adjusting the lengths or speeds of operation of the conveyors so that merely stating the requirement of additional time for "blooming" would suggest to a person of ordinary skill that this could be done by providing the loading conveyor with additional length in the reference patent. Whether this additional time be afforded by a single conveyor or by a plurality of serial conveyors is clearly a matter of engineering judgment.

### Opinion

Appellant urges in his brief (1) that the prior art does not suggest the automatic advancement of the bales on the pre-conveyors to supply an un-opened bale to the bale opening conveyors when the downstream-most bale thereon is completely opened; (2) that the loading conveyor of Platt is not related to the blooming process of the untied bales; and (3) that the prior art does not sug-

gest the use of a plurality of pre-conveyors rather than a single pre-conveyor.

Appellant contends that the photocell control means 47 in Platt is not interconnected to the conveyor 31. He quotes part of the Platt disclosure, which, he contends, indicates that conveyor 31 is operated by a *manual* switch. Placed in context, the quoted disclosure does not detract from the clear teachings of Platt that feed conveyor 31 is fully automated with the Platt picking-section control means. After explaining that all of the bales in Figure 2 continue to advance to the left when the leftmost bale is no longer of sufficient height to operate photocell 47, Platt states:

> As the advance of bales continues, the photocell 48 operates when the rearmost bale has advanced beyond it to energize relay coil 96 to close its contact 96–1 in series with *loader motor 78*. When the bales have advanced sufficiently to operate photocell 47, reversing of the direction of bale movement will take place as explained above. When sufficient reverse movement has occurred to again operate photocell 46, not only will the bales again advance but *loader motor 78 will be operated*, since its contacts 96–1 are closed and its contacts 95–5 have closed by reason of the action of the reversing relay 95 in the forward direction of conveyor motor 56. *The bale on the loader conveyor 31 will be advanced simultaneously with the advance of the other bales to the first opening unit* and the apparatus will again take up its reciprocating movement as explained above. All of the bales having been advanced and each opener unit being occupied by a bale, a new bale may then be placed on loader conveyor 31, and that conveyor advanced to ready the new bale for the next *automated advance of all of the bales* by means of manual loader switch 98. Bales may be varied as loaded for blending. [Emphasis ours.]

Thus Platt fully meets appellant's first argument.

With regard to appellant's second argument, appellant does not and can not contend that he was the first to discover the difficulties involved in handling a fully bloomed cotton bale. Clearly there would have been nothing unobvious to one skilled in the art in minimizing those difficulties by allowing some of the blooming to take place on Platt's conveyor 31. Before the board, appellant conceded that some blossoming would take place on the Platt pre-conveyor. Appellant stated that "the function of blossoming conveyor belt 31 of Platt et al. is spread among a multiplicity of conveyor belts in the instant application so that it is possible to permit blossoming of bales in a continuous manner within the same time sequence as is set forth for the picking means." The only difference in that regard is that Platt's single pre-conveyor, while "continuous," is somewhat less continuous than appellant's plurality of pre-conveyors. While appellant argues that his apparatus allows complete blossoming of the bales in the pre-conveyor system, there is nothing in the claims which would require sufficient pre-conveyors to allow complete blossoming. Moreover, appellant's specification does not indicate such an absolute requirement, one of the objects being to "permit each bale to remain untethered for *several hours* previously, freed from their ties, to relax and adapt themselves to the climate in the room, thereby permitting easier picking of the contents thereof." According to appellant, it takes approximately 24 hours for a bale to completely bloom.

With regard to appellant's contentions concerning the difference in numbers of pre-conveyors between his invention and that of Platt, we agree with the position of the board quoted above. We again note that no critical number of pre-conveyors is either called for by the claims or indicated in appellant's specification.

As to claim 2, the role played by the sequential reciprocation recited therein is made clear by the *following excerpt* from appellant's specification, with ref-

erence to his Figure 1 reproduced *supra*:

> The conveyor belts are driven in the manner that the Bales B1–B5 are moved continuously back and forth in the direction indicated by the double-headed arrow P over the opening devices A1–A4 *in such a manner that the bales lie close together. For this purpose,* the drives of the conveyor belts F1–F5 are driven in such a manner that upon movement to the right the movement of the belt F5 starts earlier than that of the belt F4, the movement of the belt F4 starts earlier than that of the belt F3, etc., and that upon movement to the left the movement of each belt which is further to the right starts moving before the adjacent belt which is further to the left. [Emphasis added.]

Thus the function of the sequential reciprocation is to keep the bales on the opening conveyors close together by using the rearmost conveyors to push the rearmost bales upon against the bales which are ahead of them in the direction of travel. Turning to the prior art, Platt's Figure 2, *supra,* clearly shows the bales on the reciprocating conveyors as abutting one another while they reciprocate over the opening means. That arrangement would prevent Platt's photocells, such as photocell 48 from falsely sensing that a bale has been fully picked when *in truth it is only sensing a gap* between the bales.

The difficulty we have with the rejection of claim 2 is that Platt does not disclose sequential reciprocation or any other method of keeping his reciprocating bales close together. In fact, Platt indicates that all of the conveyors are driven by the single drive means 58 and conveyor drive motor 56, which would apparently preclude sequential reciprocation of the several conveyors. Neither the examiner nor the board has pointed out any reason why it would have been obvious to modify the reciprocating conveyors in Platt to operate "sequentially." Whether such modification "could be readily accomplished" as suggested by the examiner is not determinative of whether it would have been obvious to do so, and the record does not indicate that this particular modification would have been within the skill of those of ordinary skill in the art. Accordingly, the rejection of claim 2 is reversed.

For the foregoing reasons, we *affirm* the board's decision sustaining the rejection of claims 5 and 3, and *reverse* its decision as to claim 2.

Modified.